UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT INTERLOCAL RISK MANAGEMENT AGENCY,<br><br>Plaintiff,<br><br>v.<br><br>MUNICH REINSURANCE AMERICA, INC.,<br><br>Defendant. | No.:  3:26-cv-00107 |

## MOTION TO DISMISS

Now comes defendant Munich Reinsurance America, Inc. ("Defendant" or "MRAm") by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(1) hereby files this Motion to Dismiss the Complaint of the Plaintiff Connecticut Interlocal Risk Management Agency on the ground that the Court lacks subject matter jurisdiction over the claim asserted in the Complaint, and for such other and further relief as to this Court may seem just and proper in the circumstances.

Dated: March 20, 2026

REARDON SCANLON LLP

_____
By:  Katherine A. Scanlon (ct18129)
Reardon Scanlon LLP
45 South Main Street, Suite 305
West Hartford, CT   06107
860-955-9451
Katherine.Scanlon@reardonscanlon.com

(Pro Hac Vice to be filed)
Bruce M. Friedman
GALLO VITUCCI KLAR LLP
*Attorneys for Defendant*

1

711 Third Avenue, Suite 500
New York, NY  10017
(212)-683-7100
bfriedman@gvlaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT INTERLOCAL RISK MANAGEMENT AGENCY, <br><br> Plaintiff, <br><br> v. <br><br> MUNICH REINSURANCE AMERICA, INC., <br><br> Defendant. | No.:  3:26-cv-00107 |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS**

Defendant Munich Reinsurance America, Inc. (hereinafter, "MRAm") respectfully submits this Memorandum of Law in support of the within motion to dismiss.  The basis of this motion is that the Court lacks subject matter jurisdiction over this action because there is no case or controversy pleaded that is ripe for judicial determination.

**PRELIMINARY STATEMENT**

Plaintiff Connecticut Interlocal Risk Management Agency (hereinafter, "CIRMA") filed a Complaint for Declaratory Judgment against MRAm pursuant to 28 U.S.C. § 2201 and 2202 and Federal Rules of Civil Procedure, Rule 57.  CIRMA seeks a judicial determination that MRAm must provide coverage under a certain reinsurance agreement between the parties "for any judgment rendered against [a CIRMA insured]" in an underlying action in which that CIRMA insured is named as a defendant.  *See* Affirmation of Bruce M. Friedman ("Friedman Aff") ¶6, and Ex. 3 thereto.  According to CIRMA's Complaint, there has yet to be a finding of liability against its insured, the Shelton Board of Education ("Shelton") (Compl. ¶¶ 15, 18).  The essence of the

claim asserted in the underlying action is sexual abuse (Compl. ¶ 8).  Consequently, although CIRMA alleges that it is providing a defense to Shelton (Compl. ¶ 7), CIRMA has no current legal obligation to pay a damage claim against Shelton under its Liability and Property Insurance Policy ("Policy").  CIRMA contends that the Policy is subject to reinsurance under the reinsurance agreement between CIRMA and MRAm.

### THE REINSURANCE AGREEMENT

CIRMA and MRAm's predecessor in name, American Re-Insurance Company, entered into a reinsurance contract pursuant to which MRAm agreed to reinsure certain policies of insurance that CIRMA issued to underlying insureds (hereinafter, the "Treaty").  *See* Friedman Aff. ¶1 and Ex. 1 thereto. It is alleged in the Complaint that the Treaties cover the periods 2005-2006, 2006-2007, 2007-2008 and 2008-2009. (Compl. at ¶9).  The policies subject to the Treaty are identified in the Business Covered provision of the Treaty.  (Article I).  MRAm's reinsurance is provided on an excess of loss basis, meaning that its reinsurance is implicated only after CIRMA has paid a retention.  Ex. 1, at pp. 1-3.  Article II of the Treaty, entitled Retention and Limit, specifies that CIRMA's retention is "$1,000,000 Ultimate Net Loss, per occurrence, per member, per line of business." Id.  MRAm's limit of liability is "$10,000,000 Ultimate Net Loss, per occurrence, per member, per line of business…" *Id.* However, for sexual abuse claims, MRAm's limit of liability under the Treaty is $5,000,000.  "Ultimate Net Loss" is defined in the Treaty.

> A. The Term "Ultimate Net Loss" shall mean the sum or sums paid by the company for which it is liable, under Coverage Documents reinsured hereunder, including any Loss Adjustment Expenses, as hereinafter defined, which are included as part of the policy limit under the Company's Coverage Documents.  All sums hereunder shall be subject to deductions for all inuring reinsurances or insurances whether collectible or not, and all reimbursements or recoveries and any subrogation or salvages received.  The

> Reinsurer's liability hereunder shall not increase by reason of the inability of the Company to collect from any other reinsurer or insurer, for any reason, any amount that may be due from such reinsurer or insurer.

Ex. 1 at p. 10.

## THE UNDERLYING CLAIM

CIRMA's insured Shelton is currently named as a defendant in an action pending in the Superior Court, New Haven. Friedman Aff. at ¶4 and Ex. 2 thereto. The plaintiff in that action alleges that he was sexually abused by a former Shelton employee. The Amended Complaint in the underlying action seeks monetary damages. That action has been pending for more than seven years; however, there has been no finding of liability against Shelton because no verdict been rendered or judgment entered against Shelton.

Prior to the filing of this Declaratory Judgment action, MRAm notified CIRMA that there is no reinsurance coverage under the Treaty for the sexual abuse claim being asserted against Shelton. MRAm advised CIRMA that the Treaty provides coverage for sexual abuse claims on a claims made basis. When a risk is written on a claims made basis, the claim must first be made against the insured during the policy period (here, the Treaty term) in order to be covered. The sexual abuse claim was first made against Shelton in or about 2018, many years after the Treaty expired.[1]

## SUMMARY OF ARGUMENT

MRAm respectfully maintains that this Court lacks subject matter jurisdiction over the claim asserted in the Complaint because:

---

[1] When dealing with claims made coverages, the insurer will often grant coverage for acts which took place prior to the inception date of the policy. The Treaty provides retroactive dates for sexual abuse claims reinsured by the Treaty. See, Article XI (B).

1.    There is no case or controversy that is ripe for judicial determination.  Even if this Court were to find that the Treaty covers CIRMA in respect of the underlying sexual abuse claim, MRAm's liability to CIRMA still remains uncertain;

2.    a finding of liability on the part of CIRMA's insured would not necessarily implicate MRAm's reinsurance because:

a.    even if there is insurance coverage under CIRMA's coverage documents for the sexual abuse claims asserted against Shelton, there would still be no coverage under the Treaty;

b.    even if there is insurance coverage under CIRMA's coverage documents for the sexual abuse claims asserted against CIRMA's insured, there may be no obligation on the part of MRAm to indemnify CIRMA for any of CIRMA's payments if the verdict, judgment or settlement is in an amount less than $1,000,000, or if it is determined that Shelton's liability to the plaintiff arose from multiple occurrences,[2] and no single occurrence is greater than $1,000,000, the attachment point of MRAm's reinsurance; and

3.    The Treaty is a contract of indemnity in that CIRMA is obligated to make an actual payment of sums "for which it is liable under the Coverage Documents reinsured hereunder" before MRAm's obligation is triggered (See, Article VI (A) Ultimate Net Loss). There has been no finding of liability or the part of Shelton.

Contrary to the typical insured – insurer relationship, where a finding of liability on the part of the insured triggers the insurer's obligation to pay, here, a finding of liability on the part of

---

[2]  Connecticut courts apply the "unfortunate event" test to determine number of occurrences in tort cases. *See Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 316 (2001).  Although we did not locate any Connecticut cases applying the unfortunate event test to sexual abuse claims, the New York Court of Appeals has done so.  That Court held that incidents of sexual abuse spanning multiple years and occurring in multiple locations would not be aggregated into a single occurrence. *See Roman Catholic Diocese of Brooklyn v. Nat'l Fire Ins. Co. of Pittsburgh, PA*, 991 N.E.2d 666, 672-673, 21 N.Y.3d 139, 149-150 (2013)  Here, all that is known is that Shelton is alleged to have abused the plaintiff for multiple years, between 2005 and 2008.

Shelton will have absolutely no impact on MRAm's obligation to indemnify CIRMA under the Treaty.  This Court, presently, would have to make multiple academic determinations regarding reinsurance coverage where such decisions may be completely unnecessary and irrelevant if there is no finding of liability on the part of CIRMA's insured or if CIRMA's obligation to Shelton in respect of its liability to the underlying plaintiff is less than $1,000,000.

## **LEGAL STANDARD**

"Generally, a claim may be properly dismissed for lack of subject matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it." *Kingsley* v. *BMW of North America LLC*, 2012 U.S. Dist. LEXIS 64652, at *4 (S.D.N.Y. May 7, 2012) (citing Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). District courts are permitted to look to materials outside of the pleadings in determining subject matter jurisdiction. *Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."). And while the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence, *id*., "all ambiguities must be resolved and inferences drawn in favor of the plaintiff." *Kingsley*, 2012 U.S. Dist. LEXIS 64652 at *2 (citations omitted).

It is well established that "Article III of the Constitution precludes the resolution of a legal challenge 'in the absence of [a] direct and immediate dilemma.'" *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007) (internal quotations omitted).  Accordingly, "'[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 310 (E.D.N.Y. 2010) (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998) (alteration in original)).

In order for a matter to be justiciable, there must be an actual "case" or "controversy." The parties must truly be adverse to each other, the dispute must be concrete, not hypothetical, and the dispute must be capable of being resolved through an award of specific relief. In *Aetna Life Insurance Company v. Haworth,* Chief Justice Charles Evans Hughes explained this aspect of the "cases" and "controversies" requirement stating:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

"'To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question. Ripeness is peculiarly a question of timing. A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Ollie* v. *University of Connecticut*, 364 F. Sup. 3d 143, 148 (D. Conn. 2019) (quoting *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (citations omitted; internal quotation marks omitted)).

MRAm is moving to dismiss on the ground that there is no actual case or controversy capable of being adjudicated by this Court, because the Complaint does not present a justiciable claim.

**ARGUMENT**

I.    THE TREATY IS A CONTRACT OF INDEMNITY.

It is well-settled that reinsurance contracts are generally contracts of indemnity. *See The North River Ins. Co. v. ACE Am. Reinsurance*, 361 F.3d 134, 142 (2d Cir. 2004); *In re The Bennett Funding Group*, 60 F.Appx. 863, 865 (2d Cir. 2003).

The Treaty requires MRAm to indemnify CIRMA only for amounts that CIRMA has already paid, and only above a certain threshold.  (Treaty, Articles II & VI (A))  Further, CIRMA must submit to MRAm proof of payment of a loss and coverage under the Treaty in order to trigger MRAm's obligation to indemnify CIRMA. (Treaty, Article XVI.C Reports and Remittances) Thus, the Treaty is a contract of indemnity. *See, e.g., Trenwick America Reinsurance Corp.* v. *CX Reinsurance Co.*, Docket No. 3:13cv1264 (JBA), 2014 U.S. Dist. LEXIS 70823, at *2 (D. Conn. May 23, 2014)("The Reinsurance Agreement is a contract of indemnity, requiring [the reinsured] to pay a claim before it seeks reimbursement payments from reinsurers. . . .").

Since the Treaty is a contract of indemnity, neither a judgment against Shelton in the underlying action  nor a settlement of the underlying sexual abuse claim, is sufficient to trigger the reinsurance provided by the Treaty.  The judgment or settlement must be greater than $1,000,000 and CIRMA <u>must actually pay in excess of $1,000,000 per occurrence,</u> and that judgment or settlement must be covered by CIRMA's coverage documents.  But even if those events were to occur, the Treaty may not be implicated because the sexual abuse claim was not made against Shelton during the term of the Treaty.

CIRMA's obligation to pay first is essential to the reinsurance relationship.  Otherwise, reinsurance would simply be a surety for the insured when the insurer does not pay under its policy.  However, that concept has been soundly rejected by courts, which have repeatedly held that there

is no privity of contract between an insured and the reinsurer. *See, e.g., Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, 555 F.3d 87, 89 (2d Cir. 2009); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F.Supp. 518, 528 (D. Conn. 1991).

Further, because the Treaty is an indemnity contract, legal authorities holding that the obligations of a liability insurer may be determined in a declaratory judgment action are distinguishable, because, unlike a liability insurer, MRAm does not have the primary obligation to pay a loss in the event of a judgment against the underlying insured.

> In the paradigmatic insurance case, the court may issue a declaratory judgment on the insurer's indemnification obligations despite not yet knowing whether the insured may ultimately be found liable for damages. Such a declaration serves a useful purpose in clarifying or settling the legal issues involved, because after the declaratory judgment, the insured knows out of whose pocket—his or his insurer's —any damages and costs of defense will be paid.

*World Wrestling Entertainment, Inc.* v. *J.F. Ramos-Representacoes, LDA*, Docket No. 3:10-cv-1399 (CFD), 2011 U.S. Dist. LEXIS 97038, at *9 (D. Conn. Aug. 30, 2011)(Dismissing declaratory judgment action because a ruling "would, at best, only tentatively clarify legal issues in the underlying suit, and would not offer . . . relief from uncertainty.").

However, this action does not present a "paradigmatic insurance case." Here, CIRMA already knows out of whose pocket any damages will be paid, because CIRMA has the primary obligation to pay loss in the event of a judgment against its insured.[3] Further, if a judgment is obtained against CIRMA's insured in the underlying lawsuit, and CIRMA fails to pay the judgment, then the Treaty is not triggered, even if the Treaty provided coverage for the claim and

---

[3] Although unstated, courts' willingness to ascertain if an insurer is obligated under its insurance policy to cover a loss even before its insured's liability is determined may well be guided by the desire to determine if there will be funds available to compensate the damaged party. Here, there is no need to do so, since CIRMA is defending the underlying action and presumably, will cover any settlement or adverse judgment. It is noted that CIRMA's Complaint alleges that its "Policy provides occurrence-based coverage for the claim against Shelton in the Underlying Action." (Compl. ¶ 24).

was implicated by the amount of the judgment.  MRAm only pays if CIRMA pays first, and then only if CIRMA's payment is covered by the underlying policy and the Treaty and exceeds $1,000,000 per occurrence.

II.    CIRMA'S COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT PRESENT A JUSTICIABLE CLAIM.

Declaratory judgment is inappropriate where there are multiple layers of contingent events, as in this case. Federal courts have held that a contingency of "whether or not the injured party has prevailed in a separate case against the insured" will not preclude declaratory judgment.  However, the existence of a further contingency or contingencies, such as "whether [certain] policies are actually at issue, . . . makes the basis for federal jurisdiction too theoretical." *Twin City Fire Ins. Co. v. Innovative Aftermarket Systems, L.P.*, 597 F. Supp. 2d 295, 300 (D. Conn. 2009).  *See also Integris Risk Retention Group* v. *Capital Region Orthopaedics Associates, PC*, Docket No. 1:23-cv-00989 (AMN/MJK), 2024 U.S. Dist. LEXIS 178245, at *28-29 (N.D.N.Y. Sep. 30, 2024) (finding that plaintiff's duty to indemnify is not yet ripe where there has been no determination of liability in the Underlying Action).  *See also Bellefonte Reinsurance Co.* v. *Aetna Casualty & Surety Co.*, 590 F. Sup. 187, 192 (S.D.N.Y. 1984) (finding that "[p]laintiffs simply may not litigate in this Court issues which may never arise in fact or affect them to their disadvantage. . . . [and to] seek a declaratory judgment based on such hypothetical results is actually to ask the opinion of this Court with reference to a situation that may never arise").

Here, CIRMA's declaratory judgment action is contingent upon at least three events or contingencies which may never transpire:

1)      a settlement  or judgment against CIRMA's insured in the underlying lawsuit, that is also:

2)      in an amount which exceeds $1,000,000; and

3)      which is paid in full by CIRMA.

It cannot be determined at present if MRAm would be obligated to indemnify CIRMA even if this Court were to determine that the Treaty covers the underlying sexual abuse claim. Consequently, this action is patently premature and would require this Court to make legal findings that are purely abstract. A declaratory judgment on only some of the issues present here would not "clarify legal issues in the underlying suit, and would not offer . . . relief from uncertainty." *World Wrestling,* 2011 U.S. Dist. LEXIS 97038, at *10. Moreover, even if this Court were of the view that it does have jurisdiction, it clearly has the discretion to decline to exercise that jurisdiction. *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F. 3d. 357, 359 (2d Cir. 2003). A number of factors support such declination:

1.      CIRMA is not prejudiced by a dismissal, as CIRMA may refile its declaratory judgment action if and when an actual, ripe controversy exists,

2.      The action is patently premature;

3.      Neither party requires a judicial determination of reinsurance coverage at this point in time,

4.      Adjudication of the issue at this juncture constitutes a waste of judicial resources, and

5.      The relief sought may be completely unnecessary if Shelton is not required to pay more than $1,000,000 to the plaintiff in the underlying sexual abuse action.

## CONCLUSION

The relief sought by CIRMA is too speculative. Even if this Court can resolve certain legal issues, there are multiple uncertainties remaining:  not simply whether a judgment is obtained against CIRMA's insured, but for how much and over how many occurrences. And further, even if

12

all the foregoing is satisfied, MRAm has no duty to CIRMA until CIRMA actually pays an amount in excess of its retention under the Treaty.

WHEREFORE, MRAm requests that this Court issue an Order dismissing CIRMA's Complaint in its entirety, and for such other and further relief as this Court deems just and proper.

Dated: March 20, 2026                              REARDON SCANLON LLP


_____
By:  Katherine A. Scanlon (ct18129)
Reardon Scanlon LLP
45 South Main Street, Suite 305
West Hartford, CT 06107
860-955-9451
Katherine.Scanlon@reardscanlon.com


Pro Hac Vice to be filed
Bruce M. Friedman
GALLO VITUCCI KLAR LLP
*Attorneys for Defendant*
711 Third Avenue, Suite 500
New York, NY  10017
(212)-683-7100
bfriedman@gvlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading. A copy also has been sent electronically via email to:

Philip Newbury, Esq.
HOWD & LUDORF, LLC
100 Great Meadow Road, Suite 201
Wethersfield, CT 06109
pnewbury@hl-law.com


/s/Katherine A. Scanlon